**In the United States District Court**
**For the District of Maryland**

| | | |
|---|---|---|
| **United States of America** | * | |
| **v.** | * | **No.  DKC-22-429** |
| **OJ Rashad Green** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**Reply to Government's Opposition to Motion to Strike**

OJ Rashad Green, by counsel, respectfully replies to the government's Opposition to his Motion to Strike the Government's Sentencing Memorandum.

The government's Opposition does not acknowledge or address the legal standard applicable to Mr. Green's motion.  The government's only explanation for the late filing of its sentencing memorandum is its incorrect assumption that a different deadline applied—i.e., a calendaring error.  But as discussed in Mr. Green's motion to strike, a calendaring error does not serve as an extraordinary circumstance excusing a late filing.  *See Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219–20 (4th Cir. 2011) (holding that late filer failed to establish excusable neglect for filing notice of appeal one day late even though the first, second, and fourth *Pioneer* factors favored him because the reason for the delay, a "calendaring error," was inexcusable). Yet the government ignores this law altogether because it is simply cannot satisfy its burden to prove excusable neglect.  The government's radio silence on the law speaks for itself.

Moreover, the government does not even attempt to address the other considerations relevant to establishing excusable neglect. And the government's explanation—that it "regrettably missed" a scheduling notice informing the deadlines—does not explain why it failed to timely object to the PSR, or why Mr. Green's sentencing memorandum filed on June

3 did not prompt a double-checking of the deadlines.

The government incorrectly claims that Mr. Green's arguments regarding lack of notice are misplaced, contending that the defense "has been on notice of the Government's plans at sentencing almost since the trial in this case ended." ECF No. 253. This is a half-truth. As Mr. Green has acknowledged, while it is true that the defense was aware of the government's intention to present evidence and testimony related to the uncharged overdose of L.W., it is not true that the defense had notice of nearly everything else, including numerous other PSR objections, evidence, and allegations of uncharged conduct. The only notice the government provided was its March 4 email, which stated, "The Government anticipates calling two witnesses during sentencing and estimates potentially 4-6 hours. Specifically, the Government will seek to introduce evidence of relevant conduct related to the fentanyl overdose death of [L.W.], who died of a fentanyl overdose on February 14, 2022."

The government further claims that because the initial PSR included its "Statement of Facts Proven at Trial," which it had submitted to Probation in March,[1] "put the Defendant on notice that the Government believed certain enhancements were appropriate in this case." ECF No. 253 at 3. The government then lists its guideline calculations—which include a base offense level of 26, corresponding to a quantity of between 160g and 280g of fentanyl, and enhancements for premises, role, and pattern. The government then claims that its "statement of facts included information supporting each of these calculations." *Id.* This too is a reach. Of note, with respect to quantity, the government's statement of facts concludes:

---

[1] Which begs the question: why, if the government provided its Statement of Facts to Probation in March, was it unable to provide its guidelines calculations to Probation until the very end of May, after the PSR had already been revised and filed?

> 13.    Across the four controlled purchases, **GREEN** sold CS2 approximately 25.625 grams of a mixture and substance containing fentanyl. [2]

Neither the government's March 4 correspondence nor any subsequent communication prior to the government's late-filed objections on May 30, 2025, noticed the government's intention to: (1) seek to establish a drug quantity *six times* greater (160g) than the one submitted in its Statement of Facts proven at trial (25.625g); (2) seek a role enhancement, (3) seek a premises enhancement, (4) seek an additional pattern enhancement, or (5) introduce evidence of an array of additional uncharged *and acquitted* conduct at sentencing. It was not until the late-submitted objections on May 30, 2025, that the defense learned of the government's intentions with respect to the guideline calculations. Even after that, the defense remained in the dark about much of the government's arguments and evidence in support of those elevated calculations, including the evidence it intended to use in connection with the uncharged L.W. investigation.

That the defense was not on notice of anything other than the government's general intention to present evidence regarding the uncharged L.W. investigation is evidenced by counsel's communications with and discovery requests to the government ahead of sentencing. In early May, defense counsel reached out to government counsel for the explicit purpose of obtaining notice of the government's intentions at sentencing:

---

[2] This excerpt is taken from the draft PSR originally disclosed to the parties on April 9, 2025. The same language appears in the revised PSR, ECF No. 234, at ¶ 14.

| From: | Ellie Marranzini |
|---|---|
| To: | Gardner, Darren (USAMD); Brooke.Oki@usdoj.gov |
| Subject: | OJ Green sentencing |
| Date: | Monday, May 5, 2025 10:11:00 AM |

Hi Darren and Brooke,

I hope you're both well (Brooke, I know you're wrapping up a trial!)

I'd like to touch base about your plans for Mr. Green's sentencing hearing to get a sense of the evidence you plan to present. Are you available for a call today, Wednesday, or Thursday?

Thanks,

Ellie C. Marranzini

[3]

During a phone call a few days later, defense counsel asked about the government's plans for sentencing, in terms of both evidence and witnesses. Government counsel reiterated that Detectives Cheyann Harris and Ryan Johnson would testify regarding the L.W. investigation, with no mention of any other sentencing enhancement or potential dispute. Counsel indicated that Detective Harris would cover much of what was she testified to at the motions hearing, Detective Johnson would testify regarding cell site information, and that his analysis was not yet available. That same day, defense counsel sent the government a discovery demand letter requesting evidence it understood was pertinent to the government's case at sentencing, focusing on the L.W. investigation:

---

[3] Exhibit 2, email regarding discovery, at p. 3.

1) The cell phone extraction of L████ W███;
2) The cell site location analysis of Det. Johnson related to the W██ investigation, including but not limited to the exhibits you plan to use at the sentencing hearing;
3) Recordings and/or reports of law enforcement interviews with ██████████ in 2021 and 2022;
4) The names of any witnesses, aside from Det. Harris and Det. Johnson, you plan to present at sentencing;
5) Any other evidence you intend to use at sentencing.

After follow-up, on May 21, 2025, the government provided an initial discovery production responsive to requests 1) and 3). On June 1, two days before sentencing memoranda were due, defense counsel emailed to follow up on requests 2), 4), and 5). *See* Exhibit 2, emails, at p. 1. On June 4, one day *after* sentencing memoranda were due (and after Mr. Green had filed), the government responded indicating that the cell tower report (responsive to item 2) had just been provided, and that the government had not finalized the rest of its evidence:

Ellie,

The cell tower report was just sent via USAfx. Responsive to your other requests, there have been no additional interactions reported between the confidential source and Mr. Green since the final controlled purchase.

In terms of other evidence not already sent over, our evidence has not been finalized but is anticipated to include some trial exhibits, particularly videos and photos. Any new exhibits (if there are any) will be attached to our sentencing memo when filed or sent to you directly.

Regards,

Darren S. Gardner

Throughout this back and forth, defense counsel was operating under the understanding that the government's sentencing arguments would center largely on the L.W. investigation. Nothing in the government's communications indicated otherwise. But even

---

[4] Exhibit 1, discovery demand letter May 9, 2025. On May 12, defense counsel re-sent the same letter with one additional request at 4): "The dates of all contacts CS2 [ ] made to Mr. Green subsequent to September 2022, and reports of those contacts." *See* Exhibit 4, discovery demand letter amended May 12, 2025.
[5] Exhibit 2, emails, at p. 1.

on that single topic, of which there was some general notice, the government's sentencing memorandum contained new, and many more arguments, than what the defense could have reasonably expected or anticipated.

Whether or not the defense could or should have been able to glean from the government's communications, disclosures, and lack of PSR objections the bulk of its sentencing memorandum arguments and evidence is beside the point here. What is clear from the government's opposition is that it has not, and cannot, establish excusable neglect in this case. The Court should reject the government's tardy explanation as factually and legally insufficient.

Respectfully submitted,

James Wyda
Federal Public Defender

_____/s/_____
Ellie C. Marranzini, #817525
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770-4510
(301) 344-0600
(301) 344-0019 (fax)
Email: ellie_marranzini@fd.org